IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

| | | |
|---|---|---|
| GINGER PURVIS | § | PLAINTIFF |
| | § | |
| VERSUS | § | NO. 1:06CV863-LG-JMR |
| | § | |
| TABER EXTRUSIONS, L.P., and | § | |
| NATIONAL MATERIAL, L.P. | § | DEFENDANTS |

**MEMORANDUM OPINION AND ORDER GRANTING IN PART
AND DENYING IN PART MOTION FOR SUMMARY JUDGMENT**

BEFORE THE COURT is the Motion of the Defendants Taber Extrusions, L.P. and

National Material, L.P.'s [37] for Summary Judgment.  Plaintiff Ginger Purvis[1] initiated this

action alleging sexual harassment and termination on account of her pregnancy, retaliation, and

violation of the Family Medical Leave Act.  Defendants argue (1) the harassment was not severe

or pervasive, (2) she unreasonably failed to further report the harassment once her initial reports

were unsuccessful, (3) she was fired for poor attendance, (4) she failed to put Defendants on

notice that she needed Family Medical Leave, and (5) she failed to mitigate her damages after

September, 2007.  Having considered the parties's briefs, the relevant law, and the record, the

Court is of the opinion that Defendants are entitled to judgment as a matter of law on Plaintiff's

claim under the Family Medical Leave Act and any claimed front and back pay damages since

the date of her resignation.[2]  Defendants' Motion is otherwise denied.

---

[1]Since the filing of the Complaint, she has remarried, and her last name is now Toft.  For
continuity, the Court will refer to her as "Purvis."

[2]Purvis concedes that Defendants are entitled to summary judgment on her Family
Medical Leave Act claims.  She has also conceded any claims for back or front pay damages
since the date of her resignation.

FACTS AND PROCEDURAL HISTORY

From December 22, 2003, until June 24, 2005, Purvis was employed at Taber as a Junior Staff Accountant.  Taber is an aluminum manufacturing plant located in Gulfport, Mississippi.  The record is unclear as to National's relationship to Taber.  Purvis's immediate supervisor was Taylor Fulton, Division Controller.  Debbie Gaughf was the Human Resources Manager.

Between February and March, 2005, Purvis complained to both Gaughf and Fulton that certain managers were sexually harassing her with comments, touching, and attempted kissing.  In approximately April, Gaughf began keeping records of Purvis's attendance, which was affected in part because of her and her youngest daughter's medical appointments.  On June 21, Purvis discovered she was pregnant.  Although she did not tell anyone at work, by June 24, Purvis, Fulton, and Gaughf became aware there was a rumor around the plant that Purvis was pregnant.  That afternoon, Fulton terminated her and cited tardiness and poor attendance.

Subsequently, Purvis filed a complaint with the Equal Employment Opportunity Commission on August 22, 2005.  The EEOC issued her right to sue letter on May 26, 2006, and she filed the instant action on August 24.

DISCUSSION

S̲TANDARD FOR M̲OTION FOR S̲UMMARY J̲UDGMENT P̲URSUANT TO R̲ULE 56:

A motion for summary judgment shall be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." F̲ED. R̲. C̲IV. P̲. 56(c).  The Court must view the evidence in the light most favorable to the non-moving party.  *Abarca v. Metro. Transit. Auth.*, 404 F.3d 938, 940 (5th Cir.

2

2005).  A "material fact" is one that might affect the outcome of the suit under the governing law.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).   A genuine dispute about a material fact exists when the evidence is such that a reasonable jury could return a verdict for the non-moving party.  *Id.*

The party that bears the burden of proof at trial also bears the burden of proof at the summary judgment stage.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).  A party seeking summary judgment bears the initial burden of identifying those portions of the pleadings and discovery on file, together with any affidavits, which it believes demonstrate the absence of a genuine issue of material fact.  *Id.* at 325.  Once the movant carries its burden, the burden shifts to the non-movant to show that summary judgment should not be granted.  *Id.* at 324-25. "[W]hen a motion for summary judgment is made and supported . . . an adverse party may not rest upon . . . mere allegations or denials . . . but . . must set forth specific facts showing that there is a genuine issue for trial."  FED. R. CIV. P. 56(e).

<u>SEXUAL HARASSMENT</u>

To prove her sexual harassment claim, Purvis must establish that (1) she belongs to a protected class, (2) was subject to unwelcome harassment (3) based upon sex, and (4) that the harassment affected a term, condition, or privilege of her employment.  *Watts v. Kroger Co.*, 170 F.3d 505, 509 (5th Cir. 1999).  In cases of co-worker harassment, she must additionally prove (5) the Defendants knew or should have known but failed to take prompt remedial action.  *Id.*  In the case of supervisor harassment, she *may* additionally prove the fifth element.  *Sharp v. City of Houston*, 164 F.3d 923, 929 (5th Cir. 1999).  To prove the harassment affected a term, condition, or privilege of employment, she must prove it either resulted in a tangible employment action

3

(*quid pro quo*) or was severe or pervasive (hostile environment).  *Burlington Indus., Inc. v.*

*Ellreth*, 524 U.S. 742, 753-54 (1998).

    I.      SEVERE OR PERVASIVE

       Defendants first argue that the sexual harassment claim fails, because the alleged conduct

is neither severe nor pervasive.  Purvis responds that, as a whole, the conduct created a sexually

hostile working environment.

       In a hostile environment case, the harassment must be both subjectively and objectively

offensive.  *Green v. Adm'rs of the Tulane Educ. Fund*, 284 F.3d 642, 655 (5th Cir. 2002).  To

determine whether the harassment was "severe or pervasive" enough so as to alter the conditions

of employment, the Court must look at the totality of the circumstances.  *Id.*  The Court considers

such factors as (1) the frequency of the conduct, (2) the severity of the conduct, (3) whether it is

physically threatening or humiliating, (4) and whether it unreasonably interferes with the

employee's work environment.  *Id.* at 655-56.

       "Undoubtedly, the deliberate and unwanted touching of [a plaintiff's] intimate body parts

can constitute severe sexual harassment."  *Harvill v. Westward Commc'ns, L.L.C.*, 433 F.3d 428,

436 (5th Cir. 2005).  This includes buttocks and thighs.  *Id.  See also McKinnis v. Crescent*

*Guardian, Inc.*, 189 Fed. Appx. 307, 308 (5th Cir. 2006).  It does not include a pat on the

shoulder or arm.  *Shepherd v. Comptroller of Pub. Accounts*, 168 F.3d 871, 875 (5th Cir. 1999).

       For example, in *Harvill*, the Fifth Circuit reversed summary judgment and held that the

unwanted touching of the employee's breasts and buttocks, was "severe sexual harassment."

*Harvill*, 433 F.3d at 436.  Additionally, the alleged harasser grabbed her and kissed her on the

cheek, popped rubber bands at her breasts, and made a comment about the plaintiff's sex life.  *Id.*

at 435.  Summary judgment was again reversed where an employee was subjected to, among

other things, unwanted touching of her buttocks, breasts, and thigh.  *Waltman v. Int'l Paper Co.*,

875 F.2d 464, 470-72 (5th Cir. 1989).  There, too, she was subjected to a co-worker sticking his

tongue in her ear.  *Id.* at 471.  More recently, the Fifth Circuit reversed summary judgment,

where the touching included once on the employee's breast and then on her thigh.  *McKinnis*, 189

Fed. Appx. at 310.  Her supervisor further repeatedly asked her for hugs and kisses.  *Id.* at 308.

On the other hand, the Fifth Circuit affirmed summary judgment against the employee

where "the record [wa]s unclear as to how, exactly, [the harasser] touched [the Plaintiff]

inappropriately," or the plaintiff did not subjectively perceive the touchings as severe or

pervasive.  *Hockman v. Westward Commc'ns, LLC*, 407 F.3d 317, 326 (5th Cir. 2004).  *See also*,

*Gibson v. Potter*, No. 07-30521 at 10 (5th Cir. January 31, 2008).

In the case *sub judice*, Purvis testified that among other things, that she was subjected to

unwanted touching of the intimate areas of her body, and repeated kissing attempts by Material

Manager Dennis D'Aquin.  She testified that there were "several occasions that Dennis would

walk into my office and make comments or innuendos."  (Pl.'s Depo. at 39).  In January or

February of 2005, he walked into her office at one point and tried to kiss her.  She was seated at

her desk, and "[h]e came in and closed the door and says, I'm going to lock the door.  And he

walked over to me."  *Id.* at 41.  Although he did not actually lock the door, he walked to the side

of her desk, leaned over and tried to kiss her.  She then pushed him away.  She did not report this

first kissing incident to anyone, although she viewed it as being a significant affront.  During an

Excel training class, D'Aquin sat beside Purvis "and just kept making comments" that day such

as "you look good" and "let's do lunch together," and attempted to put his hands on her leg,

under the table.  *Id.* at 48.  Again, she pushed his hands away.  Finally, in "February, March

2005," D'Aquin again tried to kiss Purvis when they were at an aluminum convention in Miami,

Florida.  Purvis testified that, "The night we had, I guess, a banquet, I had walked outside to

smoke, and he walked out behind me–it was like in a courtyard area at the hotel–and he tried to

grope me and tried to kiss me, and I pushed him away."  *Id.* at 56.  Specifically, when she turned

to go back inside, and "he grabbed around . . [her] behind and legs" and tried to kiss her.  *Id.* at

57.  She told him to leave her alone and that his wife was right inside.  She continued to go

inside, and his wife then came outside.

In addition, Purvis testified she was verbally harassed by two other managers.  According

to Purvis, in March of 2005, Maintenance Manager Robert Lowman compared the size of her and

another female employee's breasts.  He told them that Purvis's were bigger.  Purvis did not say

anything, but the other employee "just said, 'Robert,' and kind of looked at him."  *Id.* at 27.  He

replied, "well, they are."  *Id.*  On another occasion, Lowman was on the phone in Purvis's office

and, in her presence, said, "I'm sitting down here looking down my accountant's shirt."  *Id.* at

65-66.  She reproached him, and he just laughed.  In front of other co-workers, Lowman made

numerous crude comments to her that she cannot specifically recall.

Finally, Purvis alleges a few days before Easter 2005, Vice President/General Manager

Robert Dunn "made a comment to me after he, Robin Day and I had gone to lunch. . . .  He

walked by my office after we got back from lunch and just stuck his head in and said, Next time

we'll go by ourself. [sic]  But it was just the way he said it."  *Id.* at 46.  "Well, he just kind of

looked in my office and, you know, kind of did his face, well, next time we'll just togeth–next

time we'll just go by ourselves."  *Id.* at 47.

Viewed in the light most favorable to Purvis, this evidence creates a genuine dispute of fact as to whether the harassment was severe or pervasive.  She was subject to the unwanted touching of her buttocks and thighs, two kissing attempts, and more than one manager made sexual comments to her alone and in front of others.  There is also evidence that she subjectively perceived the conduct as offensive.  While she agreed that the harassment did not affect her ability to perform her work, that factor alone is not determinative.  *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23 (1993); *Lauderdale v. Tex. Dep't of Crim. J.*, 512 F.3d 157, 162 (5th Cir. 2007) (finding pervasive harassment even though plaintiff conceded it did not affect her job performance).

II.     AFFIRMATIVE DEFENSE

In the alternative, Defendants argue they "are not vicariously liable for the actions of Mr. Lowman and Mr. D'Aquin because Defendants are entitled to the [*Ellreth/Faragher*] affirmative defense."  (Defs.' Memo. Summ. J. at 15).  Specifically, Defendants argue that Purvis unreasonably failed to take advantage of Defendants' alternative reporting procedures.  Neither side challenges whether the defense applies, and Defendants do not ask the Court to apply the affirmative defense to Dunn's conduct.  Purvis responds that she was not required by the harassment policy to make further reports.

Because Defendants will bear the burden of proving this affirmative defense, they "must establish 'beyond peradventure all of the essential elements of the . . . defense.'"  *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986).  Unless a supervisor's harassment resulted in a tangible employment action, the Defendants are entitled to prove (1) they "exercised reasonable care to prevent and correct promptly any sexually harassing behavior, and [(2)] that [Purvis]

unreasonably failed to take advantage of any preventive or corrective opportunities provided by

[Defendants] or to avoid harm otherwise." *Faraghar v. City of Boca Raton*, 524 U.S. 775, 807

(1998).

Defendants concede that Purvis reported Lowman's breast comparison to Gaughf, and she

failed to investigate the matter. Defendants further concede that Purvis reported D'Aquin's

Miami groping incident to Fulton, and he likewise "dismissed the report and did not investigate

the matter." (Defs.' Memo. Summ. J. at 15). There is evidence that Purvis reported the breast

comparison incident to Fulton, and he replied, "you know how managers are." (Purvis EEOC

Aff. at 1). When she told Fulton about the Miami incident, he "brushed it off and said, well, you

know how Dennis is." (Pl.'s Depo. at 58). Nevertheless, Defendants point to the Harassment

Policy and maintain it was unreasonable for her not to further report the incident to Taber's

corporate human resource or legal departments.

The harassment policy that Purvis received was entitled, "National Material L.P.

Harassment Policy." (Pl.'s Depo. at 87); (Defs.' Memo. Summ. J. Ex. 3). The record is silent  as

to National's exact role. The policy provided that if any employee felt she was a victim of sexual

harassment, she "must promptly report the incident to their Plant Manager [Dunn] or, if they

desire, directly to the Human Resources or Legal Department at National Material L.P." *Id.* at 3.

No contact information is given for National. While Purvis testified she "probably did" read the

policy, she believed that Gaughf and Fulton were the ones to whom she was supposed to report

harassment. (Pl.'s Depo. at 87).

Interestingly, Purvis argues this allowed her to report to Gaughf, as a member of the

Human Resources Department. Defendants insist this gave Purvis the option of reporting to

Taber's corporate human resources department.  There is no evidence in the record of where this department is or that it is separate from Gaughf.  Having the burden of proof on the issue, Defendants are required to prove this point.  On this record a reasonable jury could conclude that Purvis did not "unreasonably fail" to take advantage of Defendants' corrective opportunities.

PREGNANCY DISCRIMINATION

Purvis claims she was terminated in part because of her pregnancy.  To prove her pregnancy discrimination claim, she would have to prove by direct or circumstantial evidence that she was terminated "because of pregnancy, childbirth, or related medical computations."  42 U.S.C. § 2000e-(k) (2008).  Defendants argue that she will not be able to prove the pretext portion of her circumstantial evidence case.  Purvis argues she has direct evidence of discrimination.

Because the existence of direct versus circumstantial evidence alters the burden of proof, the Court must first determine if there is direct evidence of pregnancy discrimination.  *Fabela v. Socorro Indep. Sch. Dist.*, 329 F.3d 409, 415 (5th Cir. 2003).

Direct evidence is that which "if believed, prove[s] the fact in question without inference or presumption."  *Id.*  "[D]irect evidence includes any statement or document which shows on its face that an improper criterion served as a basis– not necessarily the sole basis, but *a* basis – for the adverse employment action."  *Id.*  Once the plaintiff has submitted direct evidence that pregnancy discrimination was among the motives that prompted her termination, the "burden of proof shifts to the employer to establish by preponderance of evidence that the same decision would have been made regardless of the forbidden factor."  *Id.* (quoting *Moore v. U.S. Dep't of Agric.*, 55 F.3d 991, 995 (5th Cir. 1995)).

9

Purvis points to a memorandum drafted by Gaughf and emailed to Fulton for review:

**Termination / Ginger Purvis – 6/24/05**

We called Vytas for advice.  Explained about the attendance.  Called back and explained about the rumors that she was pregnant.  Vytas said that [Fulton] should probably do it sooner than later.  Today.
. . .

Talked with Robert, too.  He would support the decision [Fulton] made.
. . .

We explained to Vytas that we had no documentation that Ginger had been counseled about her absences.  He said it would have been better if we had, but it would still be okay.

(Pl.'s Resp. Ex. C at 2).  The Court finds this is direct evidence that Purvis was fired, at least in part, because of her pregnancy.  The burden now shifts to Defendants to prove that the same decision would have been made regardless of her pregnancy.

Fulton testified by affidavit that he had already made the decision to fire Purvis before he heard the pregnancy rumor.  It is undisputed that the rumor regarding Purvis's pregnancy was discovered by Purvis and management on the morning of June 24, 2005.  This is the same day that Fulton discovered it.  That afternoon, Purvis was fired after Fulton, Gaughf, corporate counsel, and perhaps Dunn discussed her pregnancy.  That day was the first time Gaughf knew Purvis would be fired.  The evidence precludes the Court from granting Defendants summary judgment.  Viewed in the light most favorable to Purvis, there is a genuine dispute of material fact as to whether pregnancy was a basis for her termination.

R<small>ETALIATION</small>

Purvis alleges she was terminated in part in retaliation for complaining about Lowman and D'Aquin's sexual harassment.  To establish a prima facie case of retaliation, she must show

10

(1) she engaged in a statutorily protected activity, (2) she suffered an adverse employment action, and (3) there is a causal connection between the protected activity and the adverse employment action. *Mayberry v. Vought Aircraft Co.*, 55 F.3d 1086, 1092 (5th Cir. 1995). Defendants challenge the final element. They argue that there is no evidence, only Purvis's subjective belief, that she was fired in retaliation for reporting sexual harassment.

The causal link required by the third prong of the prima facie case does not rise to the level of a "but for" standard. *Raggs v. Miss. Power & Light Co.*, 278 F.3d 463, 471 (5th Cir. 2002). In fact, to establish a prima facie case, a plaintiff need only make a very minimal showing. *Nichols v. Loral Vought Sys. Corp.*, 81 F.3d 38, 41 (5th Cir. 1996). "Close timing between an employee's protected activity and an adverse action against him may provide the 'causal connection' required to make out a prima facie case of retaliation." *Swanson v. Gen. Servs. Admin.*, 110 F.3d 1180, 1188 (5th Cir. 1997). For example, a time lapse of four months has been held sufficient to meet the prima facie case on summary judgment. *Evans v. City of Houston*, 246 F.3d 344, 345 (5th Cir. 2001).

Purvis testified that her complaints were lodged in February and March of 2005. Approximately three months later, June 24, she was terminated. This close temporal proximity suffices to establish Purvis's prima facie case.

Once the prima facie case is established, the burden falls to Defendants to articulate a nondiscriminatory reason for the adverse employment action. *Shirley v. Chrysler First, Inc.*, 970 F.2d 39, 42 (5th Cir. 1992). "In addition, . . . where there is close timing . . . the employer must offer a 'legitimate, nondiscriminatory reason that explains both the adverse action *and the timing*.'" *Shackelford v. Deloitte & Touche, LLP*, 190 F.3d 398, 408 (5th Cir. 1999) (quoting

*Swanson*, 110 F.3d at 1188)).  Defendants maintain that the reason for Purvis's termination was her poor attendance record.  They claim that she often came in late and/or left early, or did not come at all.

Next, the employee assumes the burden of showing that the reason given was a pretext for retaliation.  *Swanson*, 110 F.3d at 1188.  This does involve "but for" causation.  *Strong v. Univ. Health Care Sys., L.L.C.*, 482 F.3d 802, 806 (5th Cir. 2007).  In other words, Purvis must show she would not have suffered the adverse employment action "but for" her protected activity.  *Id.*  "The timing of the adverse employment action can be a significant, although not necessarily determinative factor."  *Mayberry*, 55 F.3d at 1092.  "[T]emporal proximity alone is insufficient to prove but for causation."  *Strong*, 482 F.3d at 808.  However, temporal proximity coupled with evidence that the proffered reason is a pretext will suffice to survive summary judgment.  *Shackelford*, 190 F.3d at 409.

At least one of Purvis's complaints was made to Fulton.  The other was made to Gaughf. Both participated in the termination decision.  Fulton asserts he was the one who decided to terminate Purvis.  Purvis's most serious complaint was made to Fulton in March.  Beginning in April, he and Gaughf began to discuss Purvis's attendance record.  It is undisputed that there is "no documentation that [Purvis] had been counseled about her" attendance.  (Pl.'s Resp. Ex. C at 2).  Purvis maintains that she was never counseled about attendance.

Further, Purvis testified when she was hired, Fulton told her the hours were from 8:00 to 5:00, but the company allowed flex time, "as long as you get your work done."  (Pl.'s Depo. at 97).  Gaughf was present for this conversation.  Purvis "remember[ed] him saying that on several occasions because there were many Saturdays that [she] worked doing inventory or Saturdays

12

and Sundays, actually, those first several months [she] was there."  *Id.*  She testified that Gaughf

told her that although the company did not allow sick time, they would work with her as long as

she got her work done.  When she was fired, Fulton told Purvis he had "no problem with the

quality of her work."  (Pl.'s Resp. Ex. C at 2).  One week before her termination, he "told [her]

that the Company was going to recognize [her] performance and capabilities by paying [her]

expenses to take the Certified Public Accountant examination review course."  (Pl.'s Resp. Ex. A

at 1).

Viewed in the light most favorable to Purvis, this evidence would support a jury finding

that Purvis was fired at least in part in retaliation for her claims of sexual harassment.

MITIGATION OF DAMAGES

_____Defendants concede that Purvis successfully mitigated her damages from November 1,

2005 through "September 2007."  (Defs.' Memo. Summ. J. at 27).  However, Defendants argue

that from the time she resigned from Temple Inland in September of 2007, to date, she has failed

to exercise diligence in mitigating her damages, because she voluntarily withdrew from the labor

market.[3]  As a result, Defendants argue that she is not entitled to front or back pay from her

resignation to the present.

Although Defendants bear the burden of proof on this issue, Purvis concedes this issue.

*Sellers v. Delgado Coll.*, 902 F.2d 1189, 1193 (5th Cir. 1990).  Specifically, she states, "The

Defendant argues that the Plaintiff cannot recover back wages or future wages because she . . .

left the workforce voluntarily in September 2007. . . .  Plaintiff concedes that she cannot make a

---

[3]While Purvis turned in her resignation on September 11, 2007, the record is silent as to
when her resignation took effect or when her last day of work was.

claim for future wages because she has left the workforce. . . ." (Pl.'s Resp. at 11).

Consequently, as conceded by Purvis, she may not recover back or front pay from the effective

date of her resignation from Temple Inland to date.

      **IT IS THEREFORE ORDERED AND ADJUDGED**, that for the reasons stated above,

the Defendants' Motion for Summary Judgment [37] on Plaintiff's claim under the Family

Medical Leave Act and mitigation of damages is **GRANTED**.

      **IT IS FURTHER ORDERED AND ADJUDGED** that for the reasons stated above, the

motion for summary judgment on the remaining issues is **DENIED.**

      **SO ORDERED AND ADJUDGED** this the 10th day of June, 2008.


                           *s/ Louis Guirola, Jr.*
                           LOUIS GUIROLA, JR.
                           UNITED STATES DISTRICT JUDGE